### In re DENIKE'S ESTATE.

*(Supreme Court, General Term, First Department. July 9, 1889.)*

**1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—PAYMENT OF LEGACIES.**

Where the whole amount in the executor's hands, including a doubtful mortgage for $5,000, is but $21,000, and there are specific legacies unpaid and in course of litigation amounting to $23,000, it is error to direct the executor to pay $8,000 to residuary legatees.

**2. SAME—DISBURSEMENTS—REFEREE'S FEES.**

Where the referee certified that there were actual hearings before him on 14 different days, that he had spent 5 days in the preparation of his report, and that there had been 10 adjournments at the request of the parties, and the executor charged in his bill of costs $174 paid or incurred to the referee for 29 days at $6 per day, it was error for the surrogate, without any proof to impeach the referee's statement or the executor's charge, to reduce the allowance to $132.79.

Appeal from surrogate's court, New York county.

This is an appeal by Robert C. Reeves from a decree settling his accounts as executor of the will of Abraham Denike, deceased.

Argued before VAN BRUNT, P. J., and MACOMBER and BARTLETT, JJ.

*Henry W. Bates,* for appellant.  *H. J. Morris,* for respondent.

BARTLETT, J. The decree from which the executor appeals declares that the balance in his hands on the 17th day of December, 1885, to be accounted for, was $21,990.75. This amount was made up in part of a bond and mortgage executed by John Flin and wife to the appellant's testator, which was originally inventoried as a cash asset. The executor appears subsequently to have complained because this Flin mortgage was treated as cash, when it was in fact but a chose in action, and a doubtful security at best; and it seems that Surrogate ROLLINS held that he was not to be deemed liable on the mortgage, but was to be charged with the amount stated in the inventory,—that is to say, the full $5,000,—and to be credited with such portion as should be shown to have been lost without his fault. The same view as to the liability of the executor on account of this mortgage was evidently entertained by the present surrogate, for in the decree under review it is declared that the balance of $21,990.75, with which the executor is chargeable as of the date December 17, 1885, is "subject to a deduction for any losses to be shown on the Flin mortgage in the subsequent accounting." By the use of this language it is apparent that the learned surrogate intended to treat the Flin mortgage, not as a cash asset in the hands of the executor, but as an asset the precise value of which could not be determined at the time the decree was made; and in thus regarding it he did no more than simple justice to the executor, for it would be manifestly unfair to charge him absolutely with this bond and mortgage as cash when it appeared that he had not been able to realize upon it. After stating the balance with which the executor was chargeable, subject to the deduction for any losses on account of the Flin mortgage, as already set forth, the decree proceeded to direct at the end thereof that out of the money remaining in his hands the executor should distribute and pay to Elizabeth A. Burnham, Charles W. Denike, and Abraham Denike, the residuary legatees under the will, the sum of $2,000 each. To this portion of the decree there could be no valid objection if it appeared that the executor had enough money on hand to make the payments. But, on the contrary, it appears that he had

not.  From the balance of $21,990.75 must be deducted—*First*, $5,000 on ac-
count of the Flin mortgage, as being doubtful security in the hands of the
executor; and, *secondly*, the expense of the accounting, and the commissions
of the executor, which amounted in all to $499.58.  These deductions would
leave on hand $16,491.17.  But specific legacies to the amount of $23,000 were
left by the testator to religious and charitable institutions, and, although the
validity of these legacies is being tested, it is necessary, of course, for the ex-
ecutor to reserve an amount sufficient to pay them, together with the interest
thereon, in case they shall be sustained.  Indeed, it is stated in the brief of
the counsel for the appellant that two of these legacies, amounting in the ag-
gregate, with interest, to about $17,000, have already been adjudged valid.
Under these circumstances it is apparent that unless the Flin mortgage is re-
garded as a cash asset the executor upon the accounting under review has on
hand less than enough to pay the specific legacies due from the estate.  As
we have already seen, the surrogate has himself expressly, and, as we think,
very properly, refused to treat the Flin mortgage as cash, but has left its real
value to be determined hereafter.  So far as appears, therefore, the executor
has not more than sufficient funds to pay the specific legacies, and he should
not be required to pay anything to the residuary legatees.

As to the other objections to the decree there is only one which we deem
tenable.  We are not disposed to interfere with the determination of the sur-
rogate as to the value of the legal services rendered to the appellant.  As to
the claim that the executor should have been allowed a larger amount by way
of commissions because he was a trustee of a large portion of the estate, it
need only be said that the papers do not disclose what property he held as trus-
tee, as distinguished from that which he held as executor.  We are unable to
find anything in the record, however, which authorized the surrogate to de-
crease the referee's fees from $174 to $132.79.  The appeal-book contains a letter
from the referee, which may be regarded as equivalent to a certificate, show-
ing that there had been actual hearings before him on 14 different days, that
he had spent 5 days in the preparation of his report, and that there had been
10 adjournments at the request of the parties when the referee was ready to
go on.  He therefore charged for 29 days at $6, making $174 in all.  This
amount was inserted in the executor's bill of costs as a disbursement, and
the affidavit of the attorney stated that the disbursements mentioned in such
bill of costs had been actually made or necessarily incurred.  Under these cir-
cumstances, without any proof to dispute the statements of the referee, or
show that the charge was erroneous, it is difficult to understand why the
amount was reduced to $132.79, and particularly how the fraction of a dollar
came to be fixed as a proper part of the charge.  Even if only half fees were
allowed for adjournments the referee would be entitled to $134.  The decree
should be reversed so far as it directs the payment of $2,000 apiece to the re-
siduary legatees.  That portion thereof which fixes the referee's fees at $132.79
should also be reversed, and the matter of the referee's fees should be re-
mitted to the surrogate for retaxation.  In all other respects the decree should
be affirmed, but the executor should be allowed his costs and disbursements
on this appeal, to be paid out of the estate.  All concur.